GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Varaluz, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VARALUZ, LLC,<br><br>    Debtor. | CASE No. 24-13181-hlb<br><br>Chapter 11 |
| VARALUZ, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WHITE ROAD CAPITAL LLC d/b/a GFE HOLDINGS, and BORIS MUSHEYEV,<br><br>    Defendants. | Adversary No.<br><br><br>**COMPLAINT** |

Varaluz, LLC ("Plaintiff" or "Varaluz"), debtor and debtor in possession in the above-captioned Chapter 11 case, by and through its undersigned counsel, hereby files this Complaint against White Road Capital LLC and Boris Musheyev and states as follows:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F), (H), (K), and (O).

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409, because the Plaintiff's case is pending before the bankruptcy court.

4. The procedural grounds for the relief requested herein is Federal Rule of Bankruptcy Procedure 7001.

5. This adversary proceeding relates to the above named and numbered Chapter 11 case pending in the District of Nevada.

6. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

## II.
## PARTIES

7. Plaintiff is the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case").  Plaintiff is a Nevada limited liability company, duly formed and operating under the laws of the State of Nevada.  At all relevant ties, Plaintiff's principal place of business has been in Clark County, Nevada.

8. Defendant White Road Capital LLC ("White Road") is a limited liability company organized under the laws of the State of Delaware.  At all relevant times, Defendant's headquarters and principal place of business has been in New York at 27-01 Queens Plaza North, Suite 802, Long Island City, New York 11101.  White Road may be served by and through its registered agent: VCorp Services, LLC, 108 W. 13th Street, Suite 100, Wilmington, DE 19801.

9. Defendant Boris Musheyev ("Musheyev") is an individual who resides in the State of New York.  Musheyev may be served at 13843 Hoover Ave., Jamaica, New York 11435, or wherever he may be found.  Musheyev is the principal and CEO of White Road.

10. Musheyev may be referred to herein as the "Individual Defendant."  Collectively, White Road and the Individual Defendant may be referred to herein as the "Defendants".

## III.
## FACTS

11. On June 25, 2024 (i.e., the Petition Date), Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

12. Plaintiff is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

14. Musheyev has operated White Road to provide financial instruments, with the economic substance of very high interest loans, to struggling small and mid-sized businesses.

15. Musheyev has controlled White Road, and, unless otherwise stated, all Defendants have engaged in the acts and omissions described in this Complaint.

16. Using White Road as the lender, Defendants have engaged in a fraudulent and illegal scheme to extract funds from small and mid-sized businesses through short-term loans at usurious interest rates through financial loan instruments they call "Merchant Agreements" ("MA"s).

17. Through illegal MA transactions, such as the transaction(s) at issue in this lawsuit, Defendants have illegally collected funds from struggling small and mid-sized business in Nevada and nationwide, often driving business owners into ruinous debt and bankruptcy.

18. Defendants claim to help struggling small and mid-sized businesses by providing rapid access to funds without a lengthy, cumbersome application process and despite poor credit or no credit.

19. But the reality is, Defendants' transactions are illegal, usurious, fraudulent loans, with which Defendants debit from Plaintiff's bank account with alarming frequency (the "Remittances").

3

20. White Road drafted, proposed, and on June 2, 2023, entered into a certain funding agreement with Plaintiff (hereinafter the "Loan Agreement") pursuant to which White Road made a loan of money to Plaintiff (the "Loan"). The Loan Agreement fraudulently described the deal as a "Merchant Agreement" and as a "Purchase and Sale of Future Receivables." New York law applies to the Loan Agreement and to this dispute.

21. White Road falsely stated in the Loan Agreement that it is buying a portion, which White Road calls a "Specified Percent," of Plaintiffs future receipts of revenue/receivables. White Road set Plaintiff's payments under the Loan Agreement to a fixed, recurring daily amount of $3,890.00 (the "Remittance") that White Road fraudulently stated reflects a 15% Specified Percent of the merchant's future revenue.

22. Plaintiff actually received in net funding (the "Net Funding") from a purchase price of $462,000.00 (the "Purchase Price"). The Loan Agreement defined the so-called "Purchased Amount" of receivables as $646,338.00. The effective amount of interest paid pursuant to the Loan Agreement would be $184,338.00 ($646,338.00 - $462,000.00 = $184,338.00.).

23. White Road made daily $3,890.00 Remittance ACH withdrawals from Plaintiff's bank account, and would continue to do so until the full $646,338.00 so-called "Purchased Amount" was fully paid.

24. Under the terms of the Loan Agreement, Plaintiff's $3,890.00 daily payments would pay off the full $646,338.00 Purchased amount in 166 days ($646,338.00 divided by $3,890.00 = 166). 166 days is 45.48% of one year (166/365). So, Plaintiff was required to pay $184,338.00 interest on a $462,000.00 loan within 45.48% of one year. $184,338.00 divided by $462,000.00 = 39.9% annual interest if the daily Remittances would pay the loan back in one year. But, the daily remittances would pay the loan back in 45.48% of one year. **This results in an 87.73% annual interest rate.** (39.9% divided by 45.48%).

25. This amounts to loan sharking. The annual interest rate on the Loan not only exceeds the 16% civil usury rate, but also exceeds the 25% criminal usury rate under applicable New York law.

4

26. Further, White Road misrepresented that if Plaintiff's revenue declines in the future, the merchants can "reconcile" their past payment amounts accordingly, obtaining refunds for past payments—and adjusting for future payments as well—so that Plaintiff would not be paying more than 15% of its revenue. White Road also falsely stated in the Loan Agreement that the transaction was open-ended, such that the advance of funds may be paid off over a long term if Plaintiff's receipt of revenue slows down.

27. All these representations are a sham, created by Defendants to lure Plaintiff to sign the Loan Agreement and to evade New York usury law by disguising the loan as something it is clearly not. In reality, the Loan Agreement is a fraudulent and illegal usurious loan, not a purchase of revenue or receivables.

28. White Road collected on the Loan Agreement according to the fixed daily Remittance of $3,890.00 that had no connection to the Specified Percent of 15% of revenues stated in the Loan Agreement. Plaintiff's revenues fluctuated and varied widely from week-to-week and month-to-month, yet White Road debited the same fixed weekly Remittance from Plaintiff's bank accounts each week, regardless of declines in Plaintiff's revenue.

29. White Road promised to perform reconciliations in order to adjust the weekly Remittance amount to reflect Plaintiff's revenues as they fluctuated. White Road's promises of payment reconciliation are a fraud. White Road failed to follow the purported adjustment to the weekly Remittance and reconciliation process specified in the Loan Agreement, and manipulated the default provisions so as to put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by White Road when Plaintiff's intake of revenue declined.

30. White Road also manipulated the default provisions of the Loan Agreement and falsely claimed that Plaintiff somehow impeded and prevented White Road from receiving the weekly Remittances and Specified Percent amounts. Plaintiff did not impede or prevent White Road from receiving the weekly Remittances and Specified Percent amounts. Plaintiff did not default under the Loan Agreement. Instead White Road made the false claim that Plaintiff impeded

and prevented White Road from receiving the weekly Remittances and Specified Percent amounts in order to claim that Plaintiff defaulted on the Loan Agreement, when in reality there was no default by Plaintiff. White Road fraudulently claimed that Plaintiff defaulted under the Loan Agreement, and refused to adjust the Remittance because of the falsely claimed default.

31. White Road falsely and fraudulently declared Plaintiff in default when Plaintiff merely had insufficient funds in its bank account to cover White Road's weekly debits of the Remittance. After the bogus claim of Plaintiff's default, White Road sought immediate recovery, not only the missed Remittance payments but also Plaintiff's entire remaining balance.

32. White Road's fraudulent assertion of default by Plaintiff, put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by White Road when Plaintiff's intake of revenue declined.

33. White Road also required the Loan to be personally guaranteed and secured against a vast array of Plaintiff's assets, far beyond the revenue Defendant purported to be purchasing.

34. White Road claimed for itself status as secured creditors under UCC Article 9, enabling them to ensure full repayment in the event of Plaintiff's bankruptcy, long after Plaintiff's revenue has dwindled to zero, while unsecured and lower-priority creditors may recover little to nothing.

35. Because the Loan Agreement was, in substance, monies to be paid back with interest in fixed payments, that in practice was alterable only at White Road's whim, the so-called 'Revenue Purchase Agreement' was and is a usurious loan, fraudulently cloaked as a purchase of revenue.

36. White Road did not determine whether the Remittance in fact reflected an estimate of the Specified Percent of Plaintiff's receipts of revenue, and White Road did not reconcile the Remittance to the actual revenues of Plaintiff.

37. When Plaintiff's revenues declined after the Loan Agreement was entered into, the weekly Remittances became much higher than Plaintiff's business could sustain. Yet White Road

would not adjust the Remittance, or make refunds, based on a reconciliation pursuant to the Loan Agreement, because, among other things, White Road falsely accused Plaintiff of being in default.

38. In practice, prospective changes to weekly Remittance amounts were wholly at the discretion of White Road, and did not operate to align the weekly Remittance amounts with the percentage of revenue that White Road had purportedly purchased. The reconciliation provisions of the Loan Agreement were illusory.

39. The unavailability of reconciliation confirms that the Loan Agreement was a loan.

40. The Loan Agreement defined the funds available for White Road to collect as broader than merely Plaintiff's receipts for the sale of goods and services.

41. White Road also reserved for itself extensive recourse against Plaintiff—and Plaintiff's owner personally through a personal guarantee—ensuring White Road' ability to collect the full Payback Amount (and more) in the event of default. The recourse that White Road reserve for itself extends far beyond the percentage of business revenue it is purportedly purchasing, and it even extends to circumstances where Plaintiff's intake of revenue dwindles to zero.

42. The Loan Agreement also required full, immediate payment of the entire Payback Amount in the event of default—<u>discarding altogether the notion of payments tied to Plaintiff's revenue.</u>

43. The principal sum advanced was repayable absolutely. Plaintiff had to keep paying until the principal was paid in full.

44. White Road purported to obtain security interests pursuant to Article 9 of the Uniform Commercial Code ("<u>UCC</u>") in a vast array of Plaintiff's assets. These purported secured interests (if valid) give White Road priority status in the event of a Plaintiff's bankruptcy, ensuring that White Road can still recover in full against Plaintiff's assets—even if Plaintiff has collected zero dollars in revenue, and even while unsecured and lower-priority claims against Plaintiff remain uncollectable.

45. Moreover, White Road purported to obtain security interests in assets well beyond Plaintiff's revenue that are the subject of the Loan transaction, even including Plaintiff's "equipment, general intangibles, instruments, and inventory."

46. White Road also misrepresented to Plaintiff the facts of Plaintiff's payment history and the Remittance amounts actually due, in falsely claiming that Plaintiff defaulted on the Loan Agreement.

47. White Road misrepresented to Plaintiff that the funding transaction was not a loan, even though the facts and substance of the funding transaction indicate otherwise.

48. White Road made disclaimers in the Loan Agreement to Plaintiff that it was not a loan. Such disclaimers are false. The funding transaction is, in its substance, a fixed-payment, usurious loan, and not purchases of Plaintiff's future revenue.

49. Similarly, as set forth above, White Road also misrepresented to Plaintiff that the Remittance was determined based on a set percentage of Plaintiff's revenue, and that Plaintiff can obtain Reconciliations and Adjustments based on such percentages in the event that its revenues decline.

50. These representations are also false. In practice, White Road required Plaintiff to repay the Loan through fixed weekly Remittance amounts that were not based on Plaintiff's revenue, and White Road took numerous measures to make it virtually impossible for Plaintiff to obtain a reconciliation or an adjustment based on declining revenues, including without limitation falsely telling Plaintiff that it was in default, refusing to reconcile the Remittance amounts with the changing revenues, and accelerating the entire amount of the Loan.

51. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made—and White Road was aware of this fact at the time of the Loan Agreement and at the time of each transfer by White Road to Plaintiff.

52. Defendants false statements induced Plaintiff's sole member to sign a personal guaranty (the "Guaranty") of the Loan Agreement.

53. Nature of the participation of the Individual defendant: The Individual defendant directed and caused White Road to make each of the statements and omissions, and caused White Road to take each of the actions, described in this instrument.

## IV.
## CAUSES OF ACTION
### FIRST CAUSE OF ACTION: FRAUD

54. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

55. Each of the Defendants made false material misrepresentations to Plaintiff, including in the Loan Agreement drafted by White Road, at or shortly preceding the entering of the Loan Agreement by Plaintiff. Such misrepresentations by Defendants are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Specified Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Specified Percent, despite declining revenue;

- Falsely representing that White Road will adjust Plaintiff's future payments based on the Specified Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

- Falsely claiming that Plaintiff defaulted on the Loan.

56. Defendants intended to defraud Plaintiff by making the above statements and actions in order to get Plaintiff to enter into the usurious Loan Agreement and to illegally extract funds from Plaintiff.

57. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

58. Defendants' misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**SECOND CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION**

59. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

60. Plaintiff and Defendants had a privity or privity-like relationship giving rise to a duty of Defendants to impart correct information to Plaintiff.

61. Defendants imparted incorrect information to Plaintiff. Such misrepresentations by Defendants are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Specified Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Specified Percent, despite declining revenue;

- Falsely representing that White Road will adjust Plaintiff's future payments based on the Specified Percent of Plaintiff's revenue;

10

- Misrepresenting to Plaintiff the remaining balance; and
- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.
- Falsely claiming that Plaintiff defaulted on the Loan.

62. At the times of the misrepresentations, Defendants knew the information described above was incorrect.

63. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

64. Defendants' misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

### THIRD CAUSE OF ACTION—CIVIL CONSPIRACY TO DEFRAUD

65. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

66. All of the Defendants agreed to defraud Plaintiff. Their common objective was to trap Plaintiff into the illegal usurious Loan Agreement and illegally extract funds from Plaintiff.

67. Defendants to acts in furtherance of their common objective, including making the false statements described above in the FRAUD cause of action. Defendants had knowledge that their false and misleading statements were not correct. Defendants also knew that they would manipulate the servicing of the Loan and cause bogus defaults and refuse to reconcile or adjust the Specified Percent or weekly Remittance amounts.

68. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

69. Defendants' actions proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**FOURTH CAUSE OF ACTION:  DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349**

70. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

71. Such misrepresentations by Defendants are set forth in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Specified Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Specified Percent, despite declining revenue;

- Falsely representing that White Road will adjust Plaintiff's future payments based on the Specified Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

72. Defendants advertised and created the Loan to Plaintiff.

73. Defendants engaged in false and deceptive acts or practices in the conduct of their business and in the furnishing of loans.

12

74. Defendants' conduct was materially misleading and deceptive. Defendants' conduct was likely to mislead a reasonable consumer relating to the lending instrument acting reasonably under the circumstances. Plaintiff had no way of knowing that Defendants would manipulate the loan and generate a bogus default, then fail to reconcile the loan or adjust the usurious fixed weekly Remittance payments. Plaintiff justifiably relied on Defendants' false statements described above.

75. Plaintiff suffered injuries as a proximate result of Defendants' misleading and deceptive conduct and violations of New York General Business Law Section 349.

76. Plaintiffs seek recovery of their actual damages.

77. Further, because Defendants willfully and knowingly violated Section 349, Plaintiffs seek exemplary damages to the fullest extent of the law.

**FIFTH CAUSE OF ACTION:  CIVIL RICO**

78. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

79. The Individual defendant ran an enterprise—White Road.

80. The enterprise (Defendant company) is an ongoing organization that existed for multiple reasons (both legitimate and illegitimate) and served multiple purposes, one of which was to engage in a pattern of racketeering activity involving illegal usurious lending activities to defraud borrowers.

81. The Individual defendant caused the fraudulent loan document to be marketed to Plaintiffs and entered into by Plaintiffs. From June 2, 2023 until the present date, the Individual defendant and White Road have caused the Loan Agreement and similar other fraudulent and usurious loan agreements to be marketed and entered into by unsuspecting borrowers, thereby constituting fraud and illegal usury.

82. The Individual defendant each had a significant part in the operation and management of White Road and conducted company's affairs through a pattern of racketeering activity.

13

83. Such racketeering activity effected interstate commerce and enterprise.

84. The Individual defendant violated 18 U.S.C. Sec. 1962.

85. As a proximate result of the Individual defendant's participation in the racketeering enterprise, Plaintiff's business or property was harmed. Such harm included grossly overpaying for borrowed sums. But for the Individual defendant causing their criminal enterprise White Road to solicit and enter into the illegal usurious and fraudulent Loan Agreement, Plaintiffs would not have been harmed.

86. Plaintiff seeks damages to the fullest extent of the law.

### SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES

87. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

88. Defendants' control over and special relationship with Plaintiffs gave rise to fiduciary duties. Among these fiduciary duties are:   duty of good faith and fair dealing, duty of disclosure.

89. Defendants breached duties of good faith and fair dealing by making the statements and undertaking the actions and omissions described above, including without limitation making various misrepresentations as set forth in the facts section above, such as:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Specified Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Specified Percent, despite declining revenue;

- Falsely representing that White Road will adjust Plaintiff's future payments based on the Specified Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

- Claiming false defaults by Plaintiff

90. Defendants also manipulated the loan and generated a bogus default, then failed to reconcile the loan or adjust the usurious fixed weekly Remittance payments.

91. Defendants' misrepresentations and grossly unfair dealing proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**SEVENTH CAUSE OF ACTION -- FRAUDULENT TRANSFERS – 11 U.S.C. §548**

92. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

93. After entering into the Loan Agreement on June 2, 2023, and continuing thereafter, Plaintiff paid at least $490,943.47 (the "Transfers") to White Road based on the fraudulent and usurious Loan Agreement.

94. The Transfers are enumerated on **Exhibit 1** hereto.

95. Plaintiff received less than reasonably equivalent value in exchange for the Transfers.

96. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made—and White Road was aware of this fact at the time of the Loan Agreement and at the time of each transfer by White Road to Plaintiff.

97. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

15

98. Pursuant to 11 U.S.C. §548(a)(1)(B), Plaintiff is entitled to a judgment against White Road avoiding all of the Transfers as fraudulent transfers.

**EIGHTH CAUSE OF ACTION -- FRAUDULENT TRANSFERS – 544 AND NEW YORK UNIFORM VOIDABLE TRANSACTION ACT SECTION 273**

99. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

100. After entering into the Loan Agreement on December 22, 2022, and continuing through late in 2023, Plaintiff paid the Transfers to White Road based on the fraudulent and usurious Loan Agreement.

101. To the extent that the Transfers were not in satisfaction of an antecedent debt, then Plaintiff received less than reasonably equivalent value in exchange therefor.

102. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made made—and White Road was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Plaintiff to White Road.

103. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

104. Pursuant to 11 U.S.C. §544 and the New York Uniform Voidable Transaction Act, Plaintiff is entitled to a judgment against White Road avoiding all of the Transfers as fraudulent transfers.

**NINTH CAUSE OF ACTION -- PREFERENTIAL TRANSFERS**

105. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

106. Certain of the Transfers were taken by White Road within ninety (90) days of the Petition Date (the "Preferential Transfers").

107. The Preferential Transfers were transfers of an interest of Plaintiff in property, made to or for the benefit of White Road.

108. To the extent that the debt on the Loan Agreement was legitimate, the Preferential Transfers were made for or on account of an antecedent debt owed by Plaintiff to White Road before the Preferential Transfers were made. To the extent the Preferential Transfers were not made for or on account of an antecedent debt, then Plaintiff received less than reasonably equivalent value in exchange therefor.

109. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Preferential Transfers were made made— and White Road was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Plaintiff to White Road.

110. At the time the Preferential Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

111. The Preferential Transfers enabled White Road to receive more than White Road would have received if (a) Plaintiff's case was brough under Chapter 7 of the Bankruptcy Code, (b) the Preferential Transfers had not been made, and (c) White Road had received payment of such debt to the extent provided by the Bankrutpcy Code.

112. Pursuant to 11 U.S.C. §547(b), Plaintiff is entitled to a judgment against White Road avoiding all of the Preferential Transfers.

**TENTH CAUSE OF ACTION: RECOVERY OF FUNDS UNDER 11 U.S.C. §§550, 551**

113. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

114. The fraudulent transfers are avoidable pursuant to 11 U.S.C. §§544 and 548.

115. The preferential transfers are avoidable as preferences pursuant to 11 U.S.C. §547.

116. Plaintiff, the debtor in this Chapter 11 Case, may recover from White Road, and preserve for the benefit of the bankruptcy estate, the preferential and fraudulent transfers pursuant

17

to 11 U.S.C. §§550 and 551, along with pre- and post-judgment interest on the value of the transfers.

**ELEVENTH CAUSE OF ACTION:  DECLARATORY JUDGMENT**

117. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

118. The Federal Declaratory Judgment Act states that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a).  Accordingly, Plaintiff seeks declaratory judgment from this Court as follows.

119. In this instance, a declaratory judgment is justiciable, because a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests regarding the Loan Agreement between Plaintiff and White Road.

120. White Road claims that the Loan Agreement is a lawful, non-usurious, agreement to purchase Plaintiff's revenues.  Plaintiff claims that the Loan Agreement is an illegal usurious loan agreement disguised as a revenue purchase agreement.  White Road has taken monies from Plaintiff purportedly in re-payment of revenues.  In reality, such funds represent payments on a usurious loan.

121. Plaintiff asks this Court to for a declaratory judgment that:

- the Loan Agreement is a usurious,
- the Loan Agreement is illegal,
- the Loan Agreement is void,
- Plaintiff owes nothing to White Road,
- the Guaranty of the Loan Agreement are void, and
- the UCC liens asserted by White Road against the property of Plaintiff are void;

. . .

. . .

. . .

**TWELFTH CAUSE OF ACTION:  DISALLOWANCE OF PROOF OF CLAIM**

122. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

123. White Road filed proof of claim number 14 in the Chapter 11 Case (the "POC").

124. The POC should be disallowed pursuant to 11 U.S.C. § 502(d).

125. The POC should be disallowed as the Loan Agreement is void.

**EXEMPLARY/PUNITIVE DAMAGES**

126. Defendants have acted willfully and maliciously with regard to the facts and claims asserted above.  Plaintiff seeks exemplary/punitive damages against Defendants for each cause of action to the fullest extent of applicable law.

**INTEREST**

127. Plaintiff seeks all pre- and post-judgment interest for each cause of action to the fullest extent of applicable law.

**ATTORNEY FEES, EXPENSES, AND COSTS**

128. Plaintiff seeks all reasonable and necessary attorney fees, along with expenses and costs for the prosecution of this action, to the fullest extent of applicable law.

**WHEREFORE,** Plaintiff prays for and demands order and judgment against the Defendants as follows:

1. Damages in an amount to be awarded at trial, including exemplary/punitive damages and pre- and post-judgment interest;

2. Avoidance of the Transfers and Preferential Transfers and judgment in the amount of the Transfers and Preferential Transfers;

3. Declaratory judgment as set forth in Cause of Action Eleven;

4. Disallowance of the POC; and

. . .

. . .

. . .

5. An award of Plaintiff's attorneys' fees and costs prosecuting this Adversary Proceeding.

Dated this 13th day of September 2024.

GARMAN TURNER GORDON LLP

By: /s/ Taliitha Gray Kozlowski
TALITHA GRAY KOZLOWSKI, ESQ.
TERESA M. PILATOWICZ, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Plaintiff Varaluz, LLC*